Joe Nicolino, Administrator, Appellant, v. E. O. Dahlquist Construction Company et al., Appellees.

No. 40617.

March 10, 1931.

*Sullivan & Sullivan* and *Royal & Royal*, for appellant.

*Pickett & Swisher*, for appellee.

Grimm, J.—Dominic Nicolino, a boy about 14 years of age, was employed by the Bryant Paving Company as a water boy for a paving crew engaged in paving a highway about two miles south of LaPorte City, Iowa, in the early part of July, 1929. The defendants Stephenson Brothers were engaged in the operation of a fleet of motor trucks hauling paving material from LaPorte City, Iowa, to the point where the paving crew was at work.

On the day of the accident, one of the trucks owned by the defendants and driven by their agent stopped near the grading crew. Dominic was going with a pail of water from the grading crew to the construction crew, and he asked the driver of the truck to stop. Dominic then stepped upon the running board of the truck. This running board did not extend the entire length of the truck, but only extended a short distance opposite

the cab of the truck. There was no fender covering the rear wheels, and the running board did not extend back to the rear wheels. The evidence tends to show that, at the point where Dominic boarded the running board, and for some distance on forward, the road had been freshly graded, and consisted of soft earth. After Dominic had stepped on the running board, the driver of the truck proceeded on his way. He had only gone a very short distance when Dominic fell under the rear right wheel and received fatal injuries. No one actually witnessed the accident.

I. From appellant's argument we quote the following:

"What the issues were: Whether a motor truck owned by Stephenson Brothers and driven by their agent was operated in a negligent and reckless manner so as to run over Dominic Nicolino, causing injuries from which Dominic Nicolino shortly died."

It is alleged in the petition, in substance, that the highway over which the truck was being driven immediately before and at the time of the accident had become very rough and uneven because of the very sandy condition of the soil, and that, "while the said driver of the truck was driving over the part of said highway at a dangerous and high rate of speed, the plaintiff's intestate, Dominic Nicolino, was thrown from the step of said truck."

On the question of the condition of the highway, the record shows from the testimony offered by the plaintiff:

"Where the truck stopped in the road at that time was a section of the road that had been graded off by our road graders immediately before that time. This was either the first or second truck that went over that particular section of the road, after our scrapers had scraped the dirt off that half of the roadway. Except as to being soft dirt, it was in whatever condition of smoothness that would exist from scraping the dirt off to cut it down to the level to which it was to be conditioned. There were no holes in the roadway made by trucks or automobiles passing over it."

It does not appear from this or any other portion of plaintiff's evidence that the road over which the truck was traveling

was "very rough and uneven, with quicksand in places in said highway, which rendered it extremely dangerous," as is alleged in the petition.

The plaintiff alleges that, just before and at the time of the accident, the truck was being driven at a dangerous and high rate of speed. The record is silent on the question of the speed at which the truck was being driven. It was a very large truck, weighing, when unloaded, approximately 6,000 pounds, and when loaded, the truck and load weighed several tons. There is no evidence whatever regarding the speed at which or manner in which the truck was being driven at the time of the accident. The burden is on the plaintiff to prove the negligence alleged. Moreover, as previously stated, no one saw the accident, and there is not in the record a scintilla of evidence even tending to show how or why Dominic Nicolino fell from the step and under the wheels of the truck. Any one of many theories is just as plausible as any other. He may have been stricken with heart failure; he may have become dizzy and faint from work, or from the heat, or both. He may have carelessly stepped off the end of the short running board, or he may have done one or more of many other things which would have caused him to fall under the wheel of the truck. It cannot be said from the record in this case that there is any evidence from which a jury "will be warranted in finding that Dominic Nicolino was thrown from the step of said truck." Moreover, there is no evidence in the record from which a jury could properly find that the truck, immediately before and at the time Dominic fell therefrom, was being driven "at a dangerous and high rate of speed," or that the driver of the truck was in any wise guilty of any negligence which proximately contributed to the death of Dominic Nicolino.

The appellant places special reliance upon two cases: *Stipetich v. Security Stove & Mfg. Co.* (Mo. App.), 218 S. W. 964, and *Grabau v. Pudwill*, 45 N. D. 423 (178 N. W. 124). In the *Stipetich* case, the court says:

"The theory upon which plaintiffs' case was pleaded in the petition was that the defendant's servant, the driver of said truck, knew the boy was in the act of boarding said truck while it was standing still, and knew the boy's position was such that the driver, in the exercise of ordinary care, could reasonably have anticipated that the boy would be hurt if the truck was

suddenly started, and that, while the boy was in this known position of danger, the driver carelessly and negligently suddenly started said truck forward with a violent jerk, whereby, as a result of such carelessness and negligence, the boy was thrown to the ground and run over and killed.''

Manifestly, this case, upon its facts, is clearly distinguishable from the case at bar.

In the *Grabau* case, the deceased boy had ridden on the running board of a Ford touring car approximately six or seven miles, when the car was so driven that, at a curve, it left the road and crashed into a wire fence. The boy was crushed between the Ford and the wire fence. There was also evidence that the driver of the car was inexperienced.

*Cooley v. Killingsworth*, 209 Iowa 646, is not in point, nor is *Cincinnati Traction Co. v. Holzenkamp*, 74 Ohio St. 379 (78 N. E. 529).

The appellant has not cited any cases, nor have we been able to find any, in which, upon a record such as the one in this case, there was held to be any question to submit to the jury. The court correctly sustained the defendant's motion for a directed verdict.

The question was not raised, and we do not express any opinion as to whether Chapter 119, Acts of the Regular Session of the Forty-second General Assembly, applies in this case.

The cause must be, and is,—*Affirmed.*

FAVILLE, C. J., and EVANS, MORLING, and KINDIG, JJ., concur.