# TOM OLSON v. ALBERT BUSKEY.[1]

June 1, 1945.

No. 33,990.

[1]Reported in 19 N. W. (2d) 57.

*Sexton, Mordaunt & Kennedy,* for appellant.
*Gallagher, Johnson & Farrish,* for respondent.

YOUNGDAHL, JUSTICE.

Defendant appeals from an order denying his alternative motion for judgment or a new trial. Plaintiff, a passenger in an automobile owned by defendant and driven by his wife with his consent, brought an action for damages resulting from injuries sustained in an accident on March 30, 1943, when the automobile ran off the highway and struck a tree.

Plaintiff was riding in the front seat of the automobile, and defendant's mother and three-year-old daughter were in the back seat. Mrs. Buskey, defendant's wife, had driven from her farm home about nine miles from Mankato and, at the time of the accident, was operating the automobile down Windmiller Hill (Madison avenue) in that city. She had reached the lower part of the hill between Fifth and Sixth streets when the steering post of the car became loose at the bottom and the steering wheel came up in

her hands. There are two curves in Windmiller Hill, which is about a mile in length. At the time of the accident, Mrs. Buskey had made the lower turn in the winding highway "and was about to straighten out the wheels and go on down the hill" when she was confronted with this sudden emergency. She tried to jam the steering rod back into place, applied the foot brake, turned off the ignition, and grabbed the emergency brake, but she had no further control of the car, which kept veering to the right, left the road at a driveway entrance, went over the driveway curb, and struck a tree.

Plaintiff adduced evidence showing that the car was operated at a speed of about 30 miles per hour before coming to the hill and that the speed was not reduced as the automobile was driven down the hill. Recovery was sought on the ground of negligence in the operation of the automobile, and also on the ground of defendant's alleged negligence in failing to inspect and keep in repair the defective steering mechanism. The lower court refused to submit the issue of negligence to the jury as it pertained to the operation of the automobile, but did submit the issue whether the steering gear was defective and whether defendant, in the exercise of ordinary care, should have known that fact. Defendant asserts that the record does not show that he had actual knowledge of any defect in the steering mechanism and does not show any breach of duty by him in this respect, and that therefore he is entitled to judgment; that, in any event, a new trial is required because of error in the court's submission to the jury of the issue of failure to inspect and keep in repair the steering apparatus and in the submission of the *res ipsa loquitur* doctrine to the jury.

■ It is the general rule that the host driver of an automobile owes his guest the duty to operate the car with reasonable care so that the danger of riding in it is not increased or a new danger added to those assumed when the guest entered the car. Rappaport v. Stockdale, 160 Minn. 78, 199 N. W. 513; Liggett & Myers Tobacco Co. v. De Parcq (8 Cir.) 66 F. (2d) 678; Cleary v. Eckart, 191 Wis. 114, 210 N. W. 267, 51 A. L. R. 576; Chaisson v. Williams,

130 Me. 341, 156 A. 154; Dickerson v. Connecticut Co. 98 Conn. 87, 118 A. 518; Patnode v. Foote, 153 App. Div. 494, 138 N. Y. S. 221; Holdhusen v. Schaible, 60 S. D. 275, 244 N. W. 392; 5 Am. Jur., Automobiles, § 235; 4 Blashfield, Cyc. of Auto. Law and Practice (Perm. ed.) § 2333.

■ When a guest enters an automobile, he accepts it in its existing condition, except as to latent defects known to the driver and unknown to the guest. Howe v. Little, 182 Ark. 1083, 34 S. W. (2d) 218; Clark v. Parker, 161 Va. 480, 171 S. E. 600; Holdhusen v. Schaible, 60 S. D. 275, 244 N. W. 392, supra; O'Shea v. Lavoy, 175 Wis. 456, 185 N. W. 525, 20 A. L. R. 1008; Marple v. Haddad, 103 W. Va. 508, 138 S. E. 113; Dickerson v. Connecticut Co. 98 Conn. 87, 118 A. 518, supra; Liggett & Myers Tobacco Co. v. De Parcq (8 Cir.) 66 F. (2d) 678, supra; 5 Am. Jur., Automobiles, § 235, supra; 4 Blashfield, Cyc. of Auto. Law and Practice (Perm. ed.) § 2333, supra; 5-6 Huddy, Cyc. of Auto Law (9 ed.) § 141.

■ The rationale of these cases is that one who invites another to ride in an automobile is not bound to furnish a sound vehicle, but that if the host has knowledge of a defective condition of the vehicle which would make riding in it hazardous or unsafe for the guest, the host has an obligation to warn the guest of such danger. Liggett & Myers Tobacco Co. v. De Parcq (8 Cir.) 66 F. (2d) 678, supra; Hensel v. Hensel Yellow Cab Co. 209 Wis. 489, 245 N. W. 159; Waters v. Markham, 204 Wis. 332, 235 N. W. 797; Petteys v. Leith, 62 S. D. 149, 252 N. W. 18; 4 Blashfield, Cyc. of Auto. Law and Practice (Perm. ed.) § 2333, supra; 5 Am. Jur., Automobiles, § 235, supra; O'Shea v. Lavoy, 175 Wis. 456, 185 N. W. 525, 20 A. L. R. 1008, supra. The host owes no duty of prior inspection or repair. Marple v. Haddad, 103 W. Va. 508, 138 S. E. 113, supra; Howe v. Little, 182 Ark. 1083, 34 S. W. (2d) 218, supra; Higgins v. Mason, 255 N. Y. 104, 174 N. E. 77; Galbraith v. Busch, 267 N. Y. 230, 196 N. E. 36. In Higgins v. Mason, supra, the court said (255 N. Y. 110, 174 N. E. 79):

"Under the authorities, the defendant host, George Mason, was not liable for the death of his guest, Robert Higgins, because of a mechanical defect in his car, although Mason, by inspection, might have discovered the fault, since Higgins, in accepting the invitation to ride, must have taken the car as he found it and no duty of inspection rested upon Mason. Mason would be liable only if he *knew* of the dangerous condition; *realized* that it involved an unreasonable risk; *believed* that the guests would not discover the condition or realize the risk; and failed to warn them of the condition and the risk involved."

In Shrigley v. Pierson, 189 Ark. 386, 72 S. W. (2d) 541, it was held error for the trial court to instruct the jury that an owner or driver was liable for injuries suffered by reason of defects in the steering gear if he knew, *or in the exercise of due care should have known, of such defect;* and that, with respect to the condition of the automobile, one invited to ride therein by owner or driver accepts the machine of the host as he finds it, subject only to the limitation that the driver or host must not set a trap or be guilty of active negligence.

■ Applying these well-established rules to the facts in the instant case, we are of the opinion that the record fails to show any breach of duty by defendant because of the defective steering apparatus. While the evidence shows that prior to the accident defendant had knowledge of the fact that the car had been shimmying considerably, there is no testimony showing knowledge of any defect in the steering mechanism. Even as to the shimmying condition, the record shows that it was corrected in the fall of 1942 and that there was no further trouble after that time. Although at one point in her testimony Mrs. Buskey said, "It was just shortly before the accident when it shimmied off and on," the following testimony indicates that there was no trouble with the shimmying after the fall of 1942:

"Q. In the fall of 1941 the car was taken to the garage here

in Mankato and this shimmying which you talk about, that was corrected?

"A. Yes, it was in the fall of 1942.

"Q. That work was done on the front end of the car and that stopped it?

"A. Yes.

"Q. That was the end of the shimmying as far as the car was concerned, was it not?

"A. Yes."

It is true that Mrs. Buskey testified that when the car shimmied the steering wheel vibrated in her hands, but she also stated unequivocally that she had no difficulty with the steering apparatus, as appears by the following questions and answers:

"Q. You had never had any difficulty with the steering apparatus of that car, had you?

"A. No, I hadn't.

"Q. When you maneuvered the steering wheel the car responded, like any car would, to the movements that you directed the car in?

"A. Yes, it did.

"Q. That is right, is it not?

"A. Yes.

"Q. And so far as you know, was there anything wrong with the car when you took it on that morning and came to Mankato?

"A. There wasn't anything wrong with it as far as I know.

"Q. You had no difficulty in coming as far as you did come with the car?

"A. No."

It is clear from the record that the only defect in the car of which defendant had knowledge was the shimmying condition, which was corrected in the fall of 1942. Defendant's knowledge of this condition was not knowledge of a defect in the steering apparatus. Plaintiff's expert witness, an automobile mechanic, testified that excessive shimmying suggests to a mechanic that the steering apparatus should be checked, but he also testified as follows:

"Q. From what you have heard here in the question and the evidence which you have heard here today or during the time that you have been here, is there anything about any of that which would lead an ordinary, prudent driver of an automobile to suspect that that shaft would come out of the worm?

\* \* \* \* \*

"A. No, there would not be.

"Q. It's just one of those things?

"A. That's right."

Defendant testified that when he got the car from the garage after the shimmying condition had been corrected he asked if they had checked the steering apparatus and if they had had to take it apart, and that they replied that such had not been necessary.

The steering mechanism consists of a steering shaft and worm. The two parts are assembled at the factory. The worm is pressed on the shaft with several tons of pressure and is supposed to be rigid and stationary. It is done in such a way that the worm and the shaft become one piece. They cannot ordinarily be pulled apart without a press, though there are many different ways in which these parts can be loosened. It is apparent that an ordinary person could not ascertain by inspection that there was looseness or a defect in this mechanism. Out of 500 Chevrolets inspected by the mechanic, he had seen only one automobile in which this steering mechanism had become loose, indicating that such a condition is not a matter of ordinary occurrence. We believe the record does not show that defendant had knowledge of any defect in the steering apparatus. Under the authorities heretofore cited, there was, therefore, no breach of duty by defendant in relation to this issue of negligence.

The case of Eastman v. Silva, 156 Wash. 613, 619, 287 P. 656, 658, upon which plaintiff strongly relies, we believe to be distinguishable, as appears from the following statement of the court in its opinion:

"The features in this case which distinguish it from cases heretofore cited, \* \* \* are that appellant was peculiarly familiar with

the occasional queer performance of the steering gear and brakes of the car; that such peculiar performance occurred within a very short time prior to the accident; that such performance of the car had not been disclosed to respondent previous to this trip; that respondent then desired to be let out, which appellant declined to permit; and that the same queer performance of the car recurred almost immediately thereafter, causing the accident and injury."

We believe the other two cases cited in connection with this issue are likewise distinguishable.

The sole issue submitted to the jury as to defendant's negligence was whether the steering gear was defective, and whether defendant, in the exercise of ordinary care, should have known that fact. The court submitted this issue of negligence in the following language:

"* * * The question of negligence in this case is was the steering gear defective? Should Mr. Buskey in the ordinary exercise of care that is exercised by ordinary prudent people have known or had reason to think that perhaps it was in bad shape and have it examined and repaired. That is what the question comes down to in this case.

\* \* \* \* \*

"* * * It comes down to the sole proposition was the steering gear defective? Should Mr. Buskey in the exercise of ordinary care have known that it was?"

In view of our conclusion that there was no breach of duty by defendant in this regard, he would be entitled to judgment here were it not for the fact that plaintiff was erroneously deprived of the right to have submitted to the jury the issue of negligence as to the operation of the vehicle. Plaintiff requested the court to charge the jury that there was negligence as to the speed at which the automobile was operated down Windmiller Hill. The request was denied and an exception taken. We believe this ruling was erroneous. Minn. St. 1941, § 169.14, subd. 1 (Mason St. 1940 Supp. § 2720-178[a]), provides:

"No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing."

Subdivision 3. (§ 2720-178[c]) provides:

"The driver of any vehicle shall, consistent with the requirements, drive at an appropriate reduced speed * * *, when traveling upon any narrow or winding roadway, and when special hazards exist with respect to pedestrians or other traffic or by reason of weather or highway conditions."

The testimony shows that Mrs. Buskey had been traveling approximately 30 miles an hour as she approached the hill and that she did not reduce the speed of the vehicle while driving down the hill. Reasonable men might well conclude that operating an automobile down a hill of this type with a descent of 5.5 percent and two winding curves without reducing speed constituted negligence under the statute. It is clear that the defective steering mechanism was a proximate cause of the accident, but if there was negligence in the operation of the automobile which proximately concurred in producing plaintiff's injuries, defendant is liable. 4 Dunnell, Dig. & Supp. § 7007, and cases cited. This issue, therefore, should have been submitted to the jury.

■ Plaintiff did not take a cross-appeal. Ordinarily, upon appeal, if the supreme court determines to affirm, it will not consider exceptions of respondent to rulings that were favorable to appellant. Winona & St. Peter R. Co. v. Denman, 10 Minn. 208 (267). However, on appeal, respondent, without a cross-appeal, may urge in support of an order or judgment under review any sound reason for affirmance, even though it is one not assigned by the trial court. Penn Anthracite Min. Co. v. Clarkson Securities Co. 205 Minn. 517, 287 N. W. 15. It is not necessary for a respondent to appeal and make assignments of error to raise points showing that he was entitled to the order or judgment rendered in his favor. Mather v. Curley, 75 Minn. 248, 77 N. W. 957, 74 A. S. R. 462. See, also, Daily v. St. Anthony Falls Water Power Co. 129 Minn. 432,

152 N. W. 840. Therefore, even though plaintiff failed to make out a case in the matter of a defective steering gear, he may urge in support of his position that defendant is not entitled to judgment notwithstanding the verdict that the issue of defendant's negligence in the operation of the automobile was a fact question for the jury. Koski v. C. M. & St. P. Ry. Co. 116 Minn. 137, 133 N. W. 790. When trial is had upon only a part of several issues raised by the pleadings in the trial court, the reviewing court, upon finding that the conclusions were wrong upon the issues tried, will not render judgment in favor of either party, but will remand the case for trial upon those issues joined which were not tried. Daily v. St. Anthony Falls Water Power Co. 129 Minn. 432, 152 N. W. 840, *supra;* Koski v. C. M. & St. P. Ry. Co. *supra;* Edward F. Gerber Co. v. Thompson, 84 W. Va. 721, 100 S. E. 733, 7 A. L. R. 730; 3 Am. Jur., Appeal and Error, § 1212. See, also, 5 C. J. S., Appeal and Error, § 1940, note 94. So here, though we find the verdict cannot be sustained upon the only issues submitted to the jury, a new trial is necessary because of the fact that the issue of negligence in the operation of the car was not tried, though the issue was joined and a request duly made for its submission to the jury. The issues to be submitted at the next trial will be whether there was negligence in the operation of the automobile at the time of the accident, and whether such negligence proximately concurred with the defective steering mechanism in producing injuries to plaintiff and the damages resulting from such injuries.

■ We feel that the doctrine of *res ipsa loquitur* should not have been submitted to the jury in this case. The facts as to the happening of the accident were fully disclosed by the evidence, and, under the authority of Heffter v. Northern States Power Co. 173 Minn. 215, 217 N. W. 102, the doctrine is not applicable.

Reversed and a new trial granted on the issues described in the opinion.